IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville July 23, 2024

**STATE OF TENNESSEE v. GREGORY CORNIELUS THOMPSON**

**Appeal from the Criminal Court for Sumner County
No. CR698-2017    Dee David Gay, Judge**

————————————————————

**No. M2023-01424-CCA-R3-CD**

————————————————————

The Defendant, Gregory Cornielus Thompson, pled guilty to two counts of robbery.  The trial court imposed an effective sentence of eight years and placed the Defendant on probation.  Thereafter, the Defendant was arrested and convicted of driving under the influence of an intoxicant and felony evading arrest.  Following a hearing, the trial court revoked his suspended sentences in full and ordered the original sentences into execution.  On appeal, the Defendant argues that a complete revocation of his sentences was an abuse of discretion.  We respectfully disagree and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;
Judgments of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and MATTHEW J. WILSON, JJ., joined.

Devon J. Sutherland, Gallatin, Tennessee, for the appellant, Gregory Cornielus Thompson.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Eric S. Mauldin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

In October 2018, the Defendant pled guilty to two counts of robbery, and the trial court sentenced the Defendant to a total effective sentence of eight years.  The trial court

imposed concurrent sentences of eight years for each conviction and placed the Defendant on supervised probation.[1]

On October 21, 2022, officers filed a probation violation warrant alleging that the Defendant had been arrested for driving under the influence of an intoxicant and felony evading arrest, among other offenses. The trial court held a hearing on September 8, 2023.

At the hearing, the State introduced certified copies of judgments showing that the Defendant was convicted of driving under the influence and felony evading arrest. The Defendant admitted that he violated the terms of his probation by committing new crimes. He also admitted that he previously violated his probation and acknowledged that he had a substance abuse issue. The Defendant asked to be reinstated to probation with the condition that he attend a year-long treatment program as a condition of his probation. He also told the court that he had no violent history and had never possessed weapons or caused bodily injury.

In response to questioning from the State and the court, the Defendant confirmed that this was his second violation of probation and that his first violation involved a six-month period of absconsion and substance use. He acknowledged that he was under the influence of marijuana while driving and that he ran from police because he was "scared and nervous." He testified that he still "deserved" probation and that with substance use treatment, he "could be a better person in society."

The trial court ordered that the Defendant serve the balance of his sentences in the Department of Correction as a consequence of the new violations. The court found that the Defendant had been offered previous chances for rehabilitation and that the instant violation was the Defendant's second. It also found that the behavior that led to the new violation endangered others and that the Defendant's original crimes and history on probation showed that he was "a danger." Finally, the trial court found that the Defendant was "not accountable" and that there was "nothing more [it could] do in this particular case."

The Defendant filed a timely notice of appeal on October 5, 2023.

---

[1] The Defendant was originally charged with two counts of aggravated robbery, each a Class B felony offense. In his original plea agreement, the Defendant agreed to plead guilty as a Range I, standard offender to the lesser offenses of robbery as Class C felonies. The Defendant also agreed to allow the trial court to consider imposing a sentence out of range, and the trial court imposed concurrent sentences of eight years. *See Hoover v. State*, 215 S.W.3d 776, 780 (Tenn. 2007) ("A plea-bargained sentence may legally exceed the maximum available in the offender Range so long as the sentence does not exceed the maximum punishment authorized for the plea offense.").

# STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The principal issue in this case is whether the trial court acted within its discretion in fully revoking the Defendant's suspended sentences. We review this issue for an "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). However, if the trial court does not make such findings, then this court "may conduct a de novo review if the record is sufficiently developed for the court to do so, or [we] may remand the case to the trial court to make such findings." *Id.* In this case, because the trial court placed sufficient findings on the record to support its decisions regarding the violation and consequence determinations, we review those decisions for an abuse of discretion.

# ANALYSIS

When a trial court imposes a sentence for criminal conduct, the court may suspend the sentence for an eligible defendant and place that defendant on probation. *See* Tenn. Code Ann. §§ 40-35-103; 40-35-303(b). The trial court may also require that the defendant comply with various conditions of probation where those conditions are suitable to facilitate rehabilitation or protect the safety of the community and individuals in it. *State v. Holmes*, No. M2020-01539-CCA-R3-CD, 2022 WL 2254422, at *16 (Tenn. Crim. App. June 23, 2022) ("The primary purpose of [a] probation sentence, however, 'is [the] rehabilitation of the defendant,' . . . and the conditions of probation must be suited to this purpose." (quoting *State v. Burdin*, 924 S.W.2d 82, 86 (Tenn. 1996))), *no perm. app. filed*; *see also* Tenn. Code Ann. § 40-28-302(1).

So long as a defendant follows the conditions of the suspended sentence, the defendant will remain on probation until the sentence expires. *See State v. Taylor*, 992 S.W.2d 941, 944-45 (Tenn. 1999). However, if a defendant violates a condition of probation, then the trial court may address the violation as it "may deem right and proper under the evidence," subject to various statutory restrictions. Tenn. Code Ann. § 40-35-311(d)(1) (Supp. 2021). As such, the nature of a probation revocation proceeding involves a two-step process with "two distinct discretionary decisions." *Dagnan*, 641 S.W.3d at 757. As our supreme court confirmed in *Dagnan*, the first step is to determine whether the defendant has violated a condition of probation, and the second is to decide the appropriate consequence of that violation. *Id.*

3

## A.     THE VIOLATION DETERMINATION

As to the first step, a trial court cannot find a violation of the conditions of probation unless the record supports that finding by a preponderance of the evidence. *See* Tenn. Code Ann. § 40-35-311(d)(1); *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005). Where a defendant admits that he or she violated a condition of probation, the trial court may properly find that a violation exists. *See State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999); *see also, e.g.*, *State v. Brewster*, No. E2021-00793-CCA-R3-CD, 2022 WL 2665951, at *4 (Tenn. Crim. App. July 11, 2022), *no perm. app. filed*.

"[C]ompliance with our state laws is an automatic condition of a suspended sentence, and when a trial court learns that a defendant has violated the law, it has the power to initiate revocation proceedings." *State v. Stubblefield*, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997). As this court has recognized in the context of felony probation, "The probation statute provides for two categories of probation violations, technical and non-technical, with differing penalties for both." *State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431, at *3 (Tenn. Crim. App. Dec. 16, 2022) (citing Tenn. Code Ann. § 40-35-311(e)(2) (Supp. 2021)). In felony probation cases, a trial court's authority to revoke probation fully for criminal conduct is generally limited to non-technical violations, or those consisting of new felonies or Class A misdemeanor offenses. *Id.*; Tenn. Code Ann. § 40-35-311(g) (Supp. 2022).

In this case, the Defendant was on probation for two felony convictions, and the Defendant admitted that he violated the conditions of his probation by committing a new felony and a Class A misdemeanor offense. At the hearing, the Defendant did not dispute that he violated his probation through this criminal conduct, and the State introduced certified copies of the judgments of conviction. As such, we conclude that the record supports a finding that the Defendant committed non-technical violations of probation. *See State v. Hawkins*, No. E2012-02093-CCA-R3-CD, 2013 WL 3497652, at *5 (Tenn. Crim. App. July 11, 2013) (finding substantial evidence of a violation when the defendant admitted the new criminal conduct and the State introduced certified copies of the judgments of conviction), *perm. app. denied* (Tenn. Oct. 6, 2013).

## B.     THE CONSEQUENCE DETERMINATION

As to the second step, "the consequence determination essentially examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation." *State v. Robinson*, No. M2022-00248-CCA-R3-CD, 2022 WL 17335656, at *4 (Tenn. Crim. App. Nov. 30, 2022), *perm. app. denied* (Tenn. Feb. 8, 2023). As the supreme court observed in *Dagnan*, a trial court may consider factors relevant to

4

the nature and seriousness of the present violation, the defendant's previous history on probation, and the defendant's amenability to future rehabilitation. *See Dagnan*, 641 S.W.3d at 759 n.5. Factors important to a defendant's amenability to correction may include the defendant's acceptance of responsibility and genuine remorse, as well as whether the defendant will follow orders from the court meant to ensure his or her effective rehabilitation. Tenn. Code Ann. § 40-35-102(3)(C); *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022), *no perm. app. filed*. A trial court may also consider whether the violation shows that the defendant is a danger to the community or individuals in it. *See* Tenn. Code Ann. § 40-28-302(1).

The trial court here offered three reasons to support its decision to revoke the Defendant's suspended sentences fully. First, the court found that the Defendant's violations were serious and represented a danger to others in the community. We agree that the nature of the violations is serious, as the Defendant committed a new felony offense even though he was already on probation for two felonies. *See State v. Everett*, No. E2022-00189-CCA-R3-CD, 2022 WL 16643628, at *4 (Tenn. Crim. App. Nov. 3, 2022) ("The seriousness of the violation only increases when the probationer continues to commit new felony offenses while on probation for a felony."), *no perm. app. filed*. More importantly, though, his driving under the influence of an intoxicant endangered the community. Our courts have long recognized that driving under the influence is inherently dangerous and that the "drunk driver cuts a wide swath of death, pain, grief, and untold injury across the roads of Tennessee." *See State v. Downey*, 945 S.W.2d 102, 104 (Tenn. 1997); *see also State v. Hollowell*, No. W2022-01434-CCA-R3-CD, 2023 WL 5815828, at *3 (Tenn. Crim. App. Sept. 8, 2023) ("[T]he general dangers and public safety concerns related to DUI . . . are facts within the common knowledge, and the court did not err by considering these public safety concerns."), *no perm. app. filed*; *State v. Parvin*, No. E2000-01756-CCA-R3-CD, 2001 WL 987189, at *7 (Tenn. Crim. App. Aug. 29, 2001) ("[O]ur courts have consistently held that driving under the influence of an intoxicant creates a great danger of risk to human life."), *no perm. app. filed*. The trial court appropriately considered these factors as part of the consequence determination. *See Dagnan*, 641 S.W.3d at 759 n.5.

Second, the trial court found that the Defendant has a history of violating the conditions of his suspended sentences. The instant violation was the Defendant's second violation, and he admitted at the hearing that he had previously absconded from supervision and engaged in substance use. This court has recognized that "prior violations may show that the defendant has poor potential for rehabilitation and is unwilling to engage in rehabilitative efforts." *See Everett*, 2022 WL 16643628, at *4 (citing cases). As such, the trial court appropriately considered these factors as part of the consequence determination. *See Dagnan*, 641 S.W.3d at 759 n.5.

Third, the trial court found that the Defendant's conduct showed that he was not likely to be rehabilitated in the community. The court observed that, despite the many chances given to the Defendant to engage in rehabilitation, he refused to be "accountable" for his actions. Indeed, the Defendant's new criminal conduct illustrates the very issue identified by the trial court. A common purpose of evading arrest is to avoid apprehension and thereby avoid accountability for one's misconduct. To that end, this type of criminal conduct may reveal the probationer to be one who will resist accepting responsibility and who will refuse voluntary cooperation in rehabilitative measures. *Cf. State v. Penny*, No. W2023-00912-CCA-R3-CD, 2024 WL 1803264, at *4 (Tenn. Crim. App. Apr. 25, 2024) ("The Defendant's decision to endanger others to avoid accountability [by evading arrest] shows that he presents an unacceptable risk to the safety of the community and the people in it."). The trial court appropriately considered the Defendant's refusal to accept accountability as evidence that further rehabilitative measures were unlikely to be successful. *See Owens*, 2022 WL 2387763, at *5.

The Defendant's principal argument is that we should reverse the trial court's decision because there are better alternatives to a full revocation. However, when we review the revocation of a defendant's suspended sentence, our function is not to make sure that the trial court has chosen the "best" possible option. *See State v. Willis*, 496 S.W.3d 653, 729 (Tenn. 2016). Instead, we ensure that the trial court applied the correct legal standards and made a reasoned choice within the range of acceptable alternatives. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Here, the trial court identified and applied the correct legal standards, made findings that have support in the record, and made a reasoned choice between acceptable alternatives. As such, we conclude that the trial court acted within its discretion in ordering that the Defendant serve his sentences in the Department of Correction as a consequence of his violations.

## CONCLUSION

In summary, we hold that the trial court acted within its discretion (1) by finding that the Defendant committed non-technical violations of the conditions of his suspended sentences; and (2) by ordering that he serve his sentences in the Department of Correction as a consequence of his violations. We respectfully affirm the judgments of the trial court.

_____
TOM GREENHOLTZ, JUDGE

6